# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PATSY ANN REIS,                                      Case No. 1:12-cv-319
      Plaintiff,                                  Dlott, J.
                                                     Litkovitz, M.J.

      vs


COMMISSIONER OF                                      **REPORT AND**
SOCIAL SECURITY,                                     **RECOMMENDATION**
      Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's statement of errors (Doc. 12), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum. (Doc. 19).

## I. Procedural Background

Plaintiff filed an application for DIB in September 2006, alleging disability since January 1, 2003, due to liver and vascular disease, high blood pressure, and seizures. Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before Administrative Law Judge (ALJ) Larry A. Temin. Plaintiff and a vocational expert appeared and testified at the ALJ hearing.[1] On April 20, 2010, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1]At the ALJ hearing, plaintiff amended her alleged disability onset date to March 30, 2006. (Tr. 49).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

Plaintiff initially filed an application for DIB in June 2003, alleging disability since January 1, 2003. ALJ Deborah Smith issued a decision on March 29, 2006, finding plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 98-110). ALJ Smith found that plaintiff had the residual functional capacity (RFC) to perform a restricted range of medium-level work, which allowed her to perform her past relevant work as a general office clerk. (Tr. 105-109).

In rendering his decision on plaintiff's subsequent DIB application, ALJ Temin recognized he was bound under principles of administrative res judicata by ALJ Smith's prior findings, absent new and material evidence or changed circumstances pertaining to plaintiff's RFC. (Tr. 10, 17-18, citing Acquiescence Ruling (AR) 98-4(6); *Drummond v. Commissioner of Social Sec.,* 126 F.3d 837, 841 (6th Cir. 1997)).[2] ALJ Temin found new and material evidence

---

[2]Principles of administrative *res judicata* apply to a decision concerning a claimant's eligibility for social security benefits. *Drummond,* 126 F.3d at 841; Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902 (June 1, 1998). Social security claimants and the Commissioner alike are barred from relitigating issues that have previously been determined. *Drummond,* 126 F.3d at 842. Absent evidence that a claimant's condition has improved, findings issued by an ALJ in a prior disability determination are binding on an ALJ in a subsequent proceeding. *Id.* at 841 (citing 20 C.F.R. § 404.905). The Commissioner has recognized the binding effect of findings made in a prior adjudication on subsequent adjudicators:

When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with

3

with regard to plaintiff's peripheral vestibular pathology and a new diagnosis of dysthymia. (Tr.

17-18). However, the ALJ determined those changes were not so extensive as to result in a

different conclusion regarding disability. (*Id.*). The ALJ applied the sequential evaluation

process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] last met the insured status requirements of the Social Security
> Act on December 31, 2009.
>
> 2. The [plaintiff] did not engage in substantial gainful activity during the period
> from her alleged onset date of March 30, 2006 through her date last insured of
> December 31, 2009 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the [plaintiff] had the following severe
> impairments: hypertension, with white matter signal abnormalities consistent with
> small vessel ischemic disease, elevated liver enzymes, obesity, mild to moderate
> mitral valve insufficiency, history of thyroidectomy and subsequent thyroid
> therapy, right peripheral vestibular pathology/Meniere's disease, an anxiety
> disorder, and a dysthymic disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the [plaintiff] did not have an impairment or
> combination of impairments that met or medically equaled one of the listed
> impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.
> 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that, through
> the date last insured, the [plaintiff] had the residual functional capacity to
> lift, carry, push and/or pull up to fifty pounds occasionally and twenty-five
> pounds frequently. The [plaintiff] can stand and/or walk for about six
> hours during a typical eight-hour workday, and sit for less than about six
> hours during a typical eight-hour workday. She cannot balance, climb
> ladders/ropes/scaffolds or work at unprotected heights or around
> hazardous machinery. The [plaintiff's] abilities to interact appropriately
> with co-workers and to respond appropriately to work pressures in a usual
> work setting are no more than moderately limited. Moderate is defined as
> limited but satisfactory. The [plaintiff] has no more than slight limitations

---

respect to the unadjudicated period unless there is new and material evidence relating to such a
finding or there has been a change in the law. . . .

AR 98-4(6).

in her abilities to understand, remember and carry out detailed instructions, to make judgments on simple work-related decisions, to interact appropriately with the public and supervisors, and to respond appropriately to changes in a routine work setting.

6. Through the date last insured, the [plaintiff] was capable of performing past relevant work as an administrative clerk. This work did not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 CFR 404.1565).

7. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from March 30, 2006, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(f)).

(Tr. 12-19).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

5

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) "the RFC finding fails to assign proper evidentiary weight to the opinions of treating physician, Rachel Coleman, M.D., and fails to give 'good reasons' for not doing so, fails to evaluate under SSR 96-2p, 20 C.F.R. § 404.1527(d), case law, and also fails to *properly* consider the psychological opinion of W. Michael Nelson, Ph.D., state agency *examining* consultative evaluator, in accordance with law"; and (2) "the ALJ's 'credibility' finding with regard to claimant's subjective complaints was not supported by substantial evidence on the record as a whole and was contrary to law, violating SSR 96-7p and case law." (Doc. 12 at 2) (emphasis in the original).

### 1. The ALJ's RFC finding is supported by substantial evidence.

Plaintiff's first assignment of error asserts that the ALJ's RFC finding is not supported by substantial evidence as the ALJ failed to properly weigh the medical opinions of plaintiff's treating physician, Rachel Coleman, M.D., and the consultative psychologist, W. Michael Nelson, Ph.D. Plaintiff contends the ALJ failed to give "good reasons" for discounting Dr.

6

Coleman's opinion. Plaintiff also alleges that the ALJ's RFC determination fails to account for the periodic nature of plaintiff's symptoms, which would preclude the performance of substantial gainful activity on a regular and sustained basis.

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(c)[1]; *Harris*, 756 F.2d 431. If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining

---

[1] Regulation 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion was previously found at § 404.1527(d).

7

what weight to give the opinion." *Wilson*, 378 F.3d at 544 (discussing former 20 C.F.R. §
404.1527(d)(2)). The ALJ must satisfy the clear procedural requirement of giving "good
reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying
benefits 'must contain specific reasons for the weight given to the treating source's medical
opinion, supported by the evidence in the case record, and must be sufficiently specific to make
clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical
opinion and the reasons for that weight.' Social Security Ruling 96-2p, 1996 WL 374188, at *5
(1996)." *Wilson,* 378 F.3d at 544.

Plaintiff's treating primary care physician, Rachel Coleman, M.D., completed a medical
assessment of plaintiff's ability to perform work-related functions in June 2009. (Tr. 379-81).
Dr. Coleman opined that plaintiff could lift and carry no more than five pounds occasionally and
two pounds frequently due to pain in the shoulders and muscles; stand and walk for no more than
15 minutes total in an eight-hour workday due to pain in the hips and muscles; sit for no more
than 30 minutes total in an eight-hour workday due to stiffness and swelling in the legs; and
never balance, stoop, crouch, kneel, or crawl. (*Id.*). Dr. Coleman noted that plaintiff has
Meniere's disease which affects her hearing and balance, and she is unsteady, clumsy, and has
diminished hearing. (Tr. 380). Dr. Coleman also reported that plaintiff has environmental
limitations involving heights, moving machinery, chemicals, and temperature extremes due to
Meniere's disease with balance issues and chronic pain, which can increase her instability, falls,
and anxiety. Because of her pain syndrome, some days may be worse than others and medication
can cause sedation. Dr. Coleman opined that plaintiff would be absent from work more than
three days per month due to her symptoms. (Tr. 381).

8

The ALJ declined to give controlling weight to Dr. Coleman's "quite limited" assessment because it stood "in marked contrast to her own medical progress notes, which show physical findings within normal limits on the whole." (Tr. 18). The ALJ gave Dr. Coleman's assessment "no more than little weight." *Id.*

The ALJ's decision in this regard is supported by substantial evidence. The ALJ reasonably determined that Dr. Coleman's medical assessment of plaintiff's physical abilities was not supported by Dr. Coleman's own progress notes or the other medical evidence of record. *See* 20 C.F.R. § 404.1527(c) (weight to treating physician's opinion dependent upon supportability and consistency with other medical evidence).

Dr. Coleman's records for the relevant three-year time period show treatment for arthritis/fibromyalgia; hypertension, frequently characterized as uncontrolled; low back pain; obesity; and various acute issues such as sinusitis. Yet, as the ALJ noted, the objective findings on physical examination, other than plaintiff's weight and blood pressure, were fairly benign. (Tr. 14, citing Tr. 413-414, 445-446, 452-453). Electrocardiograms taken on December 3, 2008 and April 22, 2009 showed sinus rhythm with no abnormalities. (Tr. 422-24). While plaintiff cites to evidence of an unstable gait and station in September 2007 due to vestibular pathology/ Meniere's disease (Tr. 343), subsequent progress notes from her treating physician in 2008 show she had a normal gait. (Tr. 430, 432). In addition, Dr. Coleman's restrictions relating to plaintiff's balance problems from Meniere's disease were reasonably accounted for in the RFC by restricting plaintiff to work involving no balancing or climbing ladders/ropes/scaffolds, or work at unprotected heights or around hazardous machinery. Notably, Dr. Coleman did not limit plaintiff's ability to stand, walk or sit due to vestibular pathology/Meniere's disease, but instead

9

reported findings of "pain" in plaintiff's shoulders, muscles, and hips in support of these restrictions, without citing any clinical or objective medical evidence in support thereof. (Tr. 379-380).

Plaintiff also cites to an EMG of plaintiff's right upper and lower extremities taken on July 7, 2006, showing "mild, chronic right C6 radiculopathy and very mild, chronic, multiple right lumbar radiculopathies" (Tr. 239), which a Mt. Healthy Family Practice physician correlated with lower and upper extremity pain in December 2006. (Doc. 19 at 2, citing Tr. 287). It is not entirely clear how the "mild" and "very mild" EMG findings cited by plaintiff support the extreme standing, walking and sitting limitations imposed by Dr. Coleman. In any event, the Mt. Healthy physician described plaintiff's lower extremity pain as "migratory" and "nonspecific" and opined that plaintiff had only "occasional" pain in her arms and hands, with an "unclear" level of upper extremity functioning. (Tr. 287). That same report also noted no limitation of motion in the joints or spine and described plaintiff's gait as normal. (Tr. 287). The ALJ considered these findings in his decision and did not err by declining to give more weight to Dr. Coleman's opinion based on these fairly benign objective and clinical findings.

Plaintiff has not otherwise addressed the ALJ's reasons for giving reduced weight to Dr. Coleman's opinion and appears to rely generally on the regulations requiring that the opinions of treating physicians be given more weight than those of nonexamining physicians. (Doc. 12 at 11). Plaintiff has not directed the Court's attention to any other clinical or objective evidence

suggesting that Dr. Coleman's opinion was entitled to greater weight than that given by the ALJ.[2] The Court finds no error in the weighing of this opinion evidence.[3]

Plaintiff also contends the ALJ failed to properly weigh the medical opinion of the consultative psychologist, W. Michael Nelson, Ph.D., who examined plaintiff on November 20, 2006. (Tr. 245-50). Dr. Nelson reported that plaintiff's psychiatric history was negative, *i.e.,* she had never been hospitalized or received outpatient treatment for mental health conditions and she began taking the psychotropic medication, Prozac, two weeks prior to the consultative evaluation. (Tr. 246). Dr. Nelson felt plaintiff was cooperative overall but related in a dejected fashion. (*Id.*). Plaintiff described her mood as "anxious" and occasionally depressed. She also described difficulties with falling asleep and experiencing panic attacks. (Tr. 246, 247). Dr. Nelson stated that plaintiff appeared ill-at-ease and preoccupied with her current situation; her intellectual functioning was in the average range; and her memory capabilities were generally adequate. (Tr. 248). Dr. Nelson diagnosed a dysthymic disorder and assigned plaintiff a Global Assessment of Functioning (GAF) score of 61.[4] (Tr. 250). He opined that plaintiff's mental

---

[2]Plaintiff does allege that her multiple complaints of problems with her feet, knees, shoulders, neck, back and chest are "attributed to arthritis found on bone scan." (Doc. 19 at 2, citing Tr. 318). However, the medical record cited by plaintiff is not a bone scan, but a thyroid-stimulating hormone test. (Tr. 318).

[3]Plaintiff argues the ALJ improperly questioned Dr. Coleman's opinion based on plaintiff's "'conservative' mode of treatment" (Doc. 12 at 11) as being outside the ALJ's area of expertise. Yet, the ALJ's comment on plaintiff's treatment was not made in connection with his assessment of Dr. Coleman's opinion, but was given as one reason to discount plaintiff's credibility. (Tr. 17) ("Despite the range of symptoms testified to, medical treatment has been essentially conservative and not particularly frequent."). Plaintiff's argument is more appropriately considered in connection with her second assignment of error.

[4]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." (*Id.*). The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). (*Id.* at 34). Individuals with scores of 61 to 70 are classified as having "some mild" symptoms and "generally functioning pretty well." (*Id.* at 32).

11

ability to relate to others was mildly to markedly impaired; her mental ability to process instructions was not impaired; her mental ability to maintain attention, concentration, persistence, and pace was not impaired; and her mental ability to withstand the stress and pressure associated with day-to-day work activity was mildly to moderately impaired. (Tr. 249-50).

The ALJ determined there was nothing in Dr. Nelson's evaluation or the other record evidence to support a finding that plaintiff had marked limitations in her ability to relate to others. (Tr. 18). The ALJ noted that Dr. Nelson's rating of a GAF of 61 indicated only "mild" limitations in social functioning and that plaintiff characterized her ability to get along with others as "good." (Tr. 18). The ALJ concluded that the new diagnosis of dysthymia did not alter the prior findings of ALJ Smith and that plaintiff's ability to interact appropriately with co-workers and to respond appropriately to work pressures in a usual work setting was limited, but satisfactory, and that she had no more than slight limitations in her abilities to understand, remember and carry out detailed instructions; to make judgments on simple work-related decisions; to interact appropriately with the public and supervisors; and to respond appropriately to changes in a routine work setting. (Tr. 16, 18).

Plaintiff states that the ALJ employed a "selective approach" in evaluating Dr. Nelson's report, "where the ALJ disagreed with Dr. Nelson's finding that claimant's ability to relate to other was '*mildly to markedly* impaired' insisting that there was nothing in the record to support a *marked* limitation in this area." (Doc. 12 at 9-10, citing Tr. 18) (emphasis in the original). Plaintiff also states the ALJ made "no effort to recontact" Dr. Nelson "to clarify these points, SSR 96-5p." *Id.* Plaintiff's brief fails to further elaborate on these alleged errors. Aside from these statements, plaintiff has failed to develop, either factually or legally, his argument that the

12

ALJ erred in evaluating Dr. Nelson's opinion. Plaintiff's allegations are insufficient to show any error by the ALJ in this regard.

Plaintiff also contends the ALJ erred by failing to find that the periodic symptoms she experiences from her severe impairments preclude full-time employment. (Doc. 12 at 13). These periodic symptoms include "memory loss, poor concentration, falling and balance problems, effects of the foot nodule, lower extremity pain, chest pain and palpitations, dizziness, backaches from sitting too long, [and] fatigue from walking . . . which are present, caused by her medical conditions, but are not present on a continuous basis, but occasionally, under certain circumstances." (Doc. 12 at 11). Plaintiff notes that Dr. Coleman opined that plaintiff would be absent from work more than three days per month due to the periodic effects of her symptoms (Tr. 381) and argues that even though the migratory, non-specific pain in her lower extremities, cardiac symptoms, and intermittent joint and muscle pain "may not be present on a continual basis" they are "surely a factor in the ability to perform work at the *substantial gainful level*." (Doc. 12 at 12) (emphasis in the original).

Whether the ALJ was bound to determine that plaintiff's periodic symptoms preclude substantial gainful activity depends on the extent to which the ALJ credited both plaintiff's allegations of periodic symptoms and Dr. Coleman's opinion on plaintiff's expected absences from work. As explained above, the ALJ's assessment of Dr. Coleman's opinion is supported by substantial evidence and therefore the ALJ reasonably discounted her opinion on plaintiff's work absences. In addition, for the reasons explained below, the ALJ's credibility finding is substantially supported by the record. Therefore, the ALJ did not err in declining to find the

13

periodic nature of plaintiff's symptoms to be disabling. Accordingly, plaintiff's first assignment of error should be overruled.[5]

### 2. The ALJ's credibility determination is supported by substantial evidence.

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Subjective complaints are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.,* 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id.* at 853. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical

---

[5]As noted by the Commissioner, plaintiff's Statement of Errors appears to raise a potential issue with respect to the consultative examination by Dr. Jennifer Bailey, but fails to articulate a cognizable argument in this regard. (Doc. 17 at 4 n.2; *see* Doc. 12 at 9). Plaintiff has not assigned as an error in this case the ALJ's assessment of Dr. Bailey's opinion. However, in her reply brief, plaintiff argues that Dr. Bailey's assessment does not support the ALJ's finding of a medium RFC, and plaintiff appears to argue that the ALJ failed to give proper weight to Dr. Bailey's assessment. (Doc. 19 at 4-5). Plaintiff did not raise this issue in her Statement of Errors and may not raise new issues for the first time in her reply brief. *See Wright v. Holbrook,* 794 F.2d 1152, 1156 (6th Cir. 1986). *See also Bishop v. Oakstone Academy,* 477 F. Supp.2d 876, 889 (S.D. Ohio 2007) ("[I]t is well established that a moving party may not raise new issues for the first time in its reply brief"). The Court therefore declines to review any new claims of error raised in plaintiff's reply brief.

impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id.*

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of the plaintiff's doctors. *Felisky,* 35 F.3d at 1040. Additional specific factors relevant to the plaintiff's allegations of pain include her daily activities; the location, duration, frequency and intensity of her pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate her pain or other symptoms; treatment other than medication plaintiff has received for relief of her pain; and any measures the plaintiff uses to relieve her pain. *Id.* at 1039-40; 20 C.F.R. § 404.1529(c). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish she is disabled, *Duncan,* 801 F.2d at 853, statements about her pain or other symptoms are not sufficient to prove her disability. 20 C.F.R. § 404.1529(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id.*

Plaintiff contends the ALJ failed to consider the regulatory factors in assessing plaintiff's credibility and that his "purported evaluation was conclusory and consisted of speculative comments and impeachment on strictly collateral matters." (Doc. 12 at 14). Plaintiff contends the "scientific" evaluations of her physical and psychological conditions by Dr. Coleman and the Mt. Healthy Family Practice physician support the serious and disabling nature of her impairments. (*Id.* at 15). Plaintiff alleges her testimony is corroborated by EMG testing and

15

"widespread arthritis . . . confirmed by bone scan." (Doc. 19 at 7, citing Tr. 239, 313).

Here, the ALJ's credibility determination is substantially supported by the record and is entitled to deference. Contrary to plaintiff's allegation, the ALJ made extensive findings regarding her credibility in connection with his determination that plaintiff retained the RFC to perform a reduced range of medium work with nonexertional restrictions to account for her mental impairments. (Tr. 16-18). The ALJ reasonably determined that the medical evidence did not reveal findings consistent with the degree of limitation alleged by plaintiff. (Tr. 17). As the ALJ noted, the objective findings from plaintiff's treating and examining physicians consistently revealed relatively benign findings except for obesity. (Tr. 17, citing Tr. 252-253, 413-414, 445-446, 452-453). The ALJ reasonably relied on the lack of objective findings, such as muscle weakness, atrophy, spasm, and neurological deficits, to find that plaintiff's complaints of severe chronic pain were not fully credible. (Tr. 17). *See Jones v. Secretary, Health and Human Services*, 945 F.2d 1365, 1369-1370 (6th Cir. 1991) (reliable objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption). The EMG evidence cited by plaintiff rated plaintiff's radiculopathy as only "mild" or "very mild." (Tr. 239). The bone scan referenced by plaintiff does not show "widespread" arthritis as alleged, but findings "consistent" with arthritis in "the knees and feet bilaterally." (Tr. 313). In addition, the mere fact that a diagnosis of arthritis may be confirmed by a bone scan is not indicative, in itself, of the severity of plaintiff's condition or the limitations it may impose on her.

Additionally, the ALJ relied on a number of other factors in assessing plaintiff's credibility. The ALJ noted that although Dr. Bailey believed plaintiff would benefit from weight

16

loss, plaintiff had not lost any weight. (Tr. 17). The ALJ also reasonably determined that plaintiff's allegations of debilitating pain and symptoms were inconsistent with the conservative and not particularly frequent treatment she received for her impairments. The type of treatment plaintiff received is a relevant regulatory factor in assessing her disability claim. *See* 20 C.F.R. § 404.1529(c)(3)(v) (factors relevant to symptoms include "[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms"). The ALJ also noted that plaintiff alleged "mental difficulty severe enough to result in suicidal ideation," but had not sought treatment from a psychologist or psychiatrist, and her primary care physician never recommended she do so. (Tr. 17). These are proper factors for evaluating credibility and the ALJ's findings are sufficiently specific to permit meaningful judicial review. Substantial evidence supports the ALJ's credibility determination that plaintiff does not suffer from disabling pain and other symptoms. Plaintiff's second assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be AFFIRMED and this matter be closed on the docket of the Court.

Date: 3/28/2013

Karen L. Litkovitz
United States Magistrate Judge

17

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PATSY ANN REIS,                                Case No. 1:12-cv-319
     Plaintiff,                                Dlott, J.
                                    Litkovitz, M.J.

     vs

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

18